IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JESSIE RAMIREZ**                                                                            **PLAINTIFF**

**V.**                                     **CIVIL ACTION NO. 3:16CV626 HTW-LRA**

**BUREAU OF PRISONS**                                              **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This cause is before the court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, and other related filings. Upon review of the pleadings and applicable case law, the undersigned recommends that the motion be granted and the Complaint be dismissed with prejudice.

Plaintiff Jessie Ramirez is currently in custody at the United States Penitentiary in Pine Knot, Kentucky, serving life sentences imposed by the United States District Court for the Western District of Texas, San Antonio Division. Plaintiff brings the instant action against Defendant Bureau of Prisons ("BOP"), alleging that it has intentionally falsified, maintained, and relied on inaccurate records in scoring his custody classification in violation of the Privacy Act. According to Ramirez, the initial Privacy Act violation occurred on February 9, 2012, at the United States Penitentiary in Pollock, Louisiana, when a prison official fabricated the following Incident Report:

> On Thursday, February 9, 2012, at approximately 2:00 PM, I was reviewing the mass interview forms from the December 31, 2011, disturbance. Inmate Ramirez stated during his interview, "This is not squashed. It is over the tables. When we came up, the PRM still had attitude. If you don't get them (PRM) off the yard, I'll hit them before they hit me. I don't carry a knife, I'll

use my fists. They need to go." Inmate Ramirez was placed in the Special Housing Unit on January 25, 2012, as a result of these comments.[1]

Ramirez denies that he made any threatening statements during his interview. He claims that prison officials fabricated the Incident Report in retaliation for his filing administrative grievances, and have refused to give him a copy of the interview in which he made the alleged threatening statement. In his subsequent transfers to other facilities, he states that he has repeatedly requested that BOP correct the false information in his Inmate Central File. Yet, despite his requests, he maintains prison officials have relied on the information to support retaliatory transfers and classifications.[2]

According to Ramirez, the failure to correct the false information in his Inmate Central File has led him to suffer serious adverse determinations. As relief, he requests that the Court order BOP to amend his records immediately and award $1,000.00 "for each and every failure of the agency to adhere to the mandates of the privacy act." He also requests that "compensatory, exemplary and punitive damages be awarded in an amount the Court deems "just and necessary."[3]

The government seeks dismissal of plaintiff's Privacy Act claim on the grounds that: (1) Plaintiff has failed to exhaust; (2) the claim is time-barred; and, (3) the information at issue is exempt from the Privacy Act. Because the government relies on matters outside the pleadings, the motion to dismiss is construed as a motion for

---

[1] ECF No. 1-1.

[2] ECF No. 1.

[3] *Id.*

summary judgment. *See* Fed. R .Civ. P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991).

### Standard of Review

This Court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

**1. Ramirez has failed to exhaust his administrative remedies.**

Defendant asserts that Ramirez's Privacy Act claim is subject to dismissal because he has failed to exhaust his administrative remedies. Ramirez acknowledges his failure to exhaust, but argues the process was rendered unavailable to him because officials failed to respond to his grievances and failed to provide the requisite forms. This argument is unavailing.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." Inmates exhaust their administrative remedies by complying with the Bureau of Prisons' Administrative Remedy Program. Inmates who begin the administrative grievance process but voluntarily halt the process prematurely have not properly exhausted their administrative remedies, and substantial compliance with administrative procedures does not suffice to exhaust administrative remedies. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001). However, when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," petitioners need not exhaust administrative remedies. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (quoting *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994)). "Exceptions to the exhaustion requirement apply only in 'extraordinary circumstances,'" i.e, where the administrative remedies are rendered unavailable, and the "[petitioner] bears the burden of demonstrating the futility of administrative review." *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (quoting *Fuller*, 11 F.3d at 62). If an inmate demonstrates an applicable exception to the exhaustion requirement, the inmate may obtain a ruling on the merits despite a lack of exhaustion.

28 C.F.R. §§ 542.10–542.19 establish a four-step BOP administrative remedies process for inmates seeking formal review of issues relating to their confinement. An inmate must first file a BP-8 form requesting informal resolution. If this is unsuccessful, the inmate must submit a formal written Administrative Remedy Request directly to the Warden through a BP-9 form within 20 days after the basis for the grievance occurred.

Within 20 calendar days of the Warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form.  If not satisfied with the Regional Director's response, the inmate may appeal by submitting a BP-11 form to the Bureau's Central Office within 30 days of the Regional Director's response.  Upon completing this multiple-tiered review process, federal inmates have exhausted the administrative remedies.

In this case, the undisputed evidence establishes that Ramirez pursed his administrative remedies through the regional level by filing his BP-9 and BP-10 forms. Ramirez claims in his Complaint that the remedy process was rendered unavailable when the Regional Director rejected his BP-10 form.  However, the Administrative-Remedy Records and Declaration submitted by the government reveal that his BP-11 form was rejected, not his BP-10.  The form was rejected because it was illegible and Ramirez failed to resubmit a legible form within the requisite 15 days.[4]  Ramirez does not claim that his Administrative-Remedy Records has been falsified, nor does he address or otherwise counter this evidence.[5]

---

[4] ECF No. 19-5.

[5] On March 2, 2017, this Court ordered the parties to provide a status update.  In response, Ramirez claims to have filed a motion requesting that this cause be voluntarily dismissed.  Ramirez states that he sought dismissal because this Court was likely to grant summary judgment based on the sworn declarations submitted by the government which he claims misrepresents and/or omits material facts.  However, there is no such motion or request reflected on the docket in this case.  Further, the "omitted facts" as outlined in his response do not appear to reference the initial fabricated report at the USP Pollock, but subsequent fabrications at USP-Coleman and USP-Yazoo City.  That is, Plaintiff appears to claim that prison officials at USP-Yazoo City also falsified information that was used to support a "retaliatory reclassification and transfer" from Yazoo City, while officials at USP-Coleman fabricated an incident report to "conceal their 8th amendment violation (i.e., failing to protect Plaintiff from assault from other prisoners.)" ECF No. 29.  In other words, Plaintiff does not simply contend as he did in his initial Complaint that prison officials at subsequent facilities relied on information initially fabricated at USP-

In addition, although not entirely clear, Ramirez also claims that the administrative remedies process was rendered unavailable when prison officials refused to provide him with the necessary forms as new violations occurred; i.e, when BOP officials at subsequent facilities knowingly relied on the fabricated report in making transfer decisions.  It is well-settled that "[i]f the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson,* 75 F. App'x. 295, 296 (5th Cir. 2003) (unpublished).  However, the mere allegation is insufficient to defeat summary judgment on the failure to exhaust. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).  The non-movant must present "sufficiently specific facts," such as the identity of the prison employees, the forms requested, the date requested, and evidence detailing the prison officials' response or denial. *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).  Ramirez has not met this burden.  Further, as Defendant points out, Ramirez's claims of unavailability are undercut by the fact that his administrative-remedy records reflect that he has filed 133 remedies since entering BOP custody. *See Banks v. Pearson*, No. 5:09CV148 DCB-MTP, 2010 WL 2817180 (S.D. Miss. Mar. 22, 2010) (rejecting inmate's claim that the administrative-remedies process was unavailable to him given evidence showing that he filed 132 remedies since his incarceration began).

---

Pollock; rather, he alleges they also fabricated information in violation of the Privacy Act.  The undersigned notes that this is not the first time that Ramirez has alleged Privacy Act violations. *See Ramirez v. Department of Justice*, 594 F. Supp. 2d 58 (D.D.C. 2009) (alleging Privacy Act violation against United States Department of Justice and United States Probation's Office for false information in presentence investigation report).  Plaintiff also appears to raise these same allegations in his motion for emergency temporary restraining order and injunctive relief filed on February 6, 2017.  ECF No. 22.

6

Ramirez has not carried his burden to show that administrative remedies were rendered unavailable due to any action by Defendant. He has shown no extraordinary circumstances warranting an exception to the exhaustion requirement. Accordingly, his petition should be dismissed for failure to exhaust administrative remedies.

**2. Ramirez's claim is barred by the statute of limitations.**

In addition, The Privacy Act requires that a lawsuit be brought within two years from the date the cause of action arises. 5 U.S.C. § 552a(g)(5). A cause of action arises on the date a plaintiff knew or had reason to know of the alleged Privacy Act violation. *See Ramirez,* 594 F.Supp.2d at 62. By his own accounts in this case, Ramirez became aware of the alleged Privacy Act violation in February 2012. Yet, he did not file the instant cause of action until August 12, 2016, more than two years after the statute of limitations expired in February 2014. Ramirez contends that he is entitled to equitable tolling of the statute of limitations because of the "continuing violation doctrine." However, "[a] new cause of action does not arise 'upon each and every subsequent adverse determination based on erroneous records,' otherwise, 'the two-year statute would never run.'" *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002) (citation omitted); *see also Allmon v. Federal Bureau of Prisons,* 605 F.Supp.2d 1, 4 (D.D.C. 2009) (holding that the cause of action in an adverse determination case accrues only once; it "does not arise each time an adverse determination is made based on allegedly erroneous records").

For the reasons stated above, it is the recommendation of the undersigned magistrate judge that Defendant's Motion to Dismiss, or in the Alternative, for Summary

Judgment be granted. The Complaint should be dismissed with prejudice, and final judgment in favor of Defendant should be entered.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on May 31, 2017.

                                                    s/ Linda R. Anderson
                                      UNITED STATES MAGISTRATE JUDGE